IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NICOLE MAXWELL,

    Plaintiff,

v.                                                                 CIV 13-0587 CLH/KBM

ACUITY, A MUTUAL INSURANCE COMPANY,
A foreign corporation doing business in New Mexico,

    Defendant.

### MEMORANDUM OPINION AND ORDER ON
### MOTION OF EXPERT WITNESS MATTHEW D. COBB, DPM TO QUASH
### SUBPOENA *DUCES TECUM*

**THIS MATTER** comes before the Court on Expert Witness Matthew D. Cobb, DPM's Motion to Quash Subpoena *Duces Tecum* (*Doc. 33*) ("Motion to Quash"), filed January 22, 2014. Having reviewed the motion and the relevant authorities, the Court finds that the Motion to Quash Subpoena is well-taken and will be granted.

Matthew D. Cobb, DPM ("Dr. Cobb"), a doctor of podiatric medicine practicing with Albuquerque Associated Podiatrists ("AAP"), was designated by Plaintiff as an expert witness in this case. AAP has established a fee schedule for its physicians' work as experts. *Doc. 34,* Ex. A*, at ¶ 4. Under this schedule, AAP physicians charge $750.00, plus applicable gross receipts tax, for each hour or portion thereof that a doctor works on expert matters. *Id.* AAP considers the fee reasonable "in part because it represents a middle range of fees that would

be payable for services of a doctor in the practice over a one-hour period." *Id.* It is also AAP's policy to require the payment of the first hour's deposition fee prior to the deposition. *Id.*

Here, Defendant arranged for the deposition of Dr. Cobb on January 23, 2014, at a time selected by Dr. Cobb's office and mutually acceptable to Plaintiff and Defendant. Upon requesting the deposition, AAP informed Defendant that it required a pre-payment of $802.50 ten days in advance as a condition to Dr. Cobb's appearance at the deposition. The $802.50 amount was comprised of the $750.00 first hour's deposition fee and $52.50 in New Mexico Gross Receipts Tax ("GRT").

Ten days before the scheduled deposition, on January 13, 2014, Defendant tendered to Plaintiff's counsel a check for $500.00 along with a Notice to Take Deposition *Duces Tecum* and Subpoena *Duces Tecum*. Defendant explained in an accompanying letter to Plaintiff's counsel that Dr. Cobb's demand of $802.50 per hour was excessive and that, instead, $500.00 or an amount set by the Magistrate Judge would be tendered by Defendant to compensate Dr. Cobb for his appearance at the deposition. Plaintiff's counsel forwarded the $500.00 check to Dr. Cobb. However, Dr. Cobb's office returned the check to Plaintiff's counsel by mail on or about January 15, 2014.

On January 14, 2014, Mark Haas, DPM, on behalf of AAP, wrote a letter to Defendant's counsel advising that pre-payment of $802.50 was required to secure Dr. Cobb's attendance at the January 23, 2014 deposition. Two days later, on January 16, 2014, Dr. Cobb wrote a letter to Defendant's counsel

advising him that he would not attend the scheduled deposition "due to non-payment in full" of his expert deposition fee.  On January 17, 2014, Defendant effected personal service of a Subpoena *Duces Tecum* on Dr. Cobb, commanding his appearance at the January 23, 2014 deposition.  No separate check was tendered with this subpoena.

Thereafter, Plaintiff's counsel sent e-mail correspondence to Defendant's counsel, indicating that Plaintiff would be filing a motion to quash the subpoena if Defendant remained unwilling to pay the quoted fee and to reschedule Dr. Cobb's deposition.  Defendant's counsel did not respond.  On January 21, 2014 and January 22, 2014, respectively, Dr. Cobb filed a Notice of Non-Appearance (*Doc. 31*) and the instant Motion to Quash (*Doc. 33*).

Federal Rule of Civil Procedure 45(c)(1) provides that "a party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to a subpoena." Fed. R. Civ. P. 45(c)(1).  Rule 45(c)(3) provides that a court, on a timely motion, must quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(c)((3)(A)(iv).  Additionally, Rule 26(4)(E) provides that "[u]nless manifest injustice would result, the court must require that the party seeking discovery . . . pay the expert a reasonable fee for time spent in responding to discovery." Fed. R. Civ. P. 26(b)(4)(E).

Plaintiff argues that the subpoena issued by Defendant should be quashed, as Defendant's refusal to pay the requested fee has subjected Dr. Cobb to undue burden.  Defendant, on the other hand, argues that both amount

3

of the hourly fee (i.e. $750.00 plus GRT) *and* the requirement that the fee be paid in advance of the deposition are unreasonable, and it urges the Court to set a more reasonable fee.

### A. Reasonableness of the Expert Fee

The Court "will not automatically tax the opposing party with any unreasonable fees charged by the expert." *Mannarino v. United States*, 218 F.R.D. 372, 374 (E.D.N.Y. 2003). Indeed, Rule 26(b), only requires Defendant to pay a "reasonable" expert fee. *See* Fed. R. Civ. P. 26(b)(4)(E). In determining whether an expert fee is reasonable, courts have considered seven non-dispositive factors:

> (1) the witness's area of expertise; (2) the education and training required to provide the expert insight that is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality, and complexity of the discovery responses provided; (5) the fee actually charged to the party who retained the expert; (6) fees traditionally charged by the expert on related matters; and (7) any other factor likely to assist the court in balancing the interests implicated by Rule 26.

*Chamberlin v. City of Albuquerque*, No. 02cv0603 JB/ACT, 2006 WL 2313538, at *6 (D.N.M. July 25, 2005) (citing *Delgado v. Sweeney*, No. Civ.A. 01-3092, 2004 WL 228962, at *3 (E.D. Pa. Jan. 6, 2004)). "The ultimate goal is to balance the parties' interests so that the party retaining the expert witness is not unduly hampered in its efforts to attract competent experts while the opposing party is not unfairly burdened by unfairly high fees preventing feasible discovery and resulting in windfalls to the opposing side's expert." *Id.* Notably, "[c]ourts most often reduce expert fee requests when the expert seeks to charge the opposing party a higher rate than the expert charges the retaining party." *Delgado*, 2004

4

WL 228962 at *3; *EEOC v. Johnson & Higgins, Inc.*, No. 93 Civ. 5481 LBS AJP, 1999 WL 32909, at *4 (S.D.N.Y. Jan. 21, 1999).

As to the first two factors, Dr. Cobb is medically-trained in podiatry and has practiced in that field for just less than six years.  Thus, while his experience and education are highly-specialized, his years of practice are somewhat limited.

As to the third factor -- the prevailing rates of other comparably-respected available experts -- Defendant's counsel has provided the Court with an informal survey of three fee schedules for an orthopaedic surgeon, a three-physician group of neurologists, and a large group of physicians practicing in New Mexico. *Doc. 36*, Ex. A-1. The fees provided in this sampling of schedules are $500 per hour plus GRT or, in the case of the orthopaedic surgeon, $600 per hour plus GRT.  Additionally, Defendant's counsel states in his affidavit that the consulting podiatrist engaged by Defendant in this case has over fifteen years of experience and charges $500 per hour.  *Doc. 36*, Ex. A ¶ 6.  As such, Dr. Cobb's fee is $150.00 to $250.00 higher per hour than each of the fees provided by Defendant.

Unfortunately, Defendant's schedules do not include dates, which somewhat diminishes their relevance and value in this context.  Moreover, Defendant's counsel's informal survey includes a rather small sampling, and he has not provided any explanation for his methodology in selecting physicians or practicing groups to include among the schedules provided to the Court.  The Court is uncomfortable relying solely this sampling of fees submitted by Defense counsel to establish the unreasonableness of Dr. Cobb's fee.  Moreover, the Court notes that once the taxes are deducted from the $500.00 that Defendant

5

tendered as a "reasonable" fee for Dr. Cobb, the balance of the fee would have become $467.28, which is substantially lower than any of the fees included in the schedules of fees provided by Defendant.

Instead, relying upon its own experience with expert fees, the Court cannot say that the $750.00 fee is entirely out of line with the fees of other medical experts practicing in specialized medical fields in Albuquerque.

As to the fourth factor, the parties have provided the Court with substantive information from which to assess this factor -- the nature, quality and complexity of the testimony expected of Dr. Cobb. The Court notes, however, that Plaintiff is claiming injuries and damages as the result of a motor vehicle accident, including a "Lisfranc's dislocation to her right foot," and that Dr. Cobb has prepared reports and opinions regarding causation and damages. As such, Dr. Cobb's testimony, particularly as to the cause of Lisfranc's dislocation and the damages therefrom, has the potential to be relatively detailed and complex.

As to the fifth factor, Dr. Cobb has clearly stated in his affidavit that the amount charged to Defendant is the same amount or less than the fee charged to Plaintiff for work as an expert. *Doc. 34*, Ex. A, at ¶ 5. Courts have noted the particular significance of this fifth factor. *See, e.g., Chamberlain*, 2006 WL 2313538 at *6 (noting that "[c]ourts most often reduce expert fee requests when the expert seeks to charge the opposing party a higher rate than the expert charges the retaining party"); *Delgado*, 2004 WL 228962, at *3. Here, this factor weighs strongly in favor of a finding of reasonableness.

As to the sixth factor, according to Dr. Cobb's affidavit, he typically sees six to nine patients an hour and generates fees equal to or in excess of $750.00, (*Doc. 34*, Ex. A, at ¶ 4), meaning that the fees that Dr. Cobb earns while practicing podiatry are in the same ballpark as the fee requested for his deposition testimony here.  While Defendant contends that this estimated revenue "appears doubtful," he has not otherwise provided any evidence to contradict this representation by Dr. Cobb.

Considering all of the nondispositive factors as well as the Court's own experience with expert fees, the Court is unwilling to say that the deposition fee established by AAP and requested by Dr. Cobb, $750.00 plus GRT per hour, is an unreasonable fee.  The Court will require Defendant to pay Dr. Cobb for his deposition testimony at this rate.

### B.  Pre-Payment Requirement

Defendant contends that it is unreasonable for Dr. Cobb to require that the first hour's fee of $750.00 plus GRT be paid in advance of Dr. Cobb's appearance at the deposition.  Indeed, Defendant posits that "[o]ur courts have agreed that it is not *reasonable to require a defendant to pay an expert in advance of his deposition*."  *Doc. 36* at 9 (emphasis in original) (citing *Chamberlin v. City of Albuquerque*, No. 02cv603, 2005 WL 2313538 JB/ACT (D.N.M. July 25, 2005)).  Defendant's representation of the law in this area is overstated.

In *Chamberlin*, the Honorable James Browning of this district determined under the circumstances[1] there that it was unreasonable for the expert to require

---

[1] Notably, the conduct of the expert in *Chamberlin* was particularly egregious.  The expert refused to be deposed at the time of his scheduled telephonic deposition, because the

7

the defendant to pay him by certified check in advance of his telephonic deposition. *Chamberlin*, 2005 WL 2313538, at *10. In reaching this decision, Judge Browning reasoned that the expert did not have "good reason to doubt that [the defendant would] pay him a reasonable fee," especially where the defendant had paid the expert his deposition fee in an unrelated case. *Id*. Judge Browning also noted that the expert had not previously required advance payment of his deposition fee. *Id*.

In contrast, AAP has a policy of requiring payment of the first hour of the deposition fee in advance, and Defendant was aware of this policy at the outset. Further, there is no suggestion that any history between Dr. Cobb and Defendant would lead Dr. Cobb to expect that Defendant will timely and voluntarily pay his requested fee. Instead, the only experience that Dr. Cobb appears to have with Defendant is its refusal to pay the requested fee in this case.

Further, even the evidence submitted by Defendant's counsel suggests that the prepayment policy adopted by AAP is somewhat common with testifying medical professionals in Albuquerque. Indeed, two-thirds of the fee schedules provided by Defendant provide for advanced payment. First, the schedule for the orthopaedic surgeon indicates that his first hour's fee (i.e. $600 plus GRT) "is due

---

defendant's counsel had not previously sent him a certified check for the maximum of four hours that it might take to complete his deposition. *Id*. at *2. However, neither the expert nor the plaintiff's counsel had advised the defendant that advanced payment by certified check was required. *Id*. at *3. Instead, the expert explained at the time that the deposition was to take place that "in difficult situations, and this is turning out to be [one], I require a certified check." *Id*. The expert also sought to charge the defendant for administrative tasks associated with scheduling and rescheduling his deposition at a higher rate, which he had established for out-of-office work, and he sought full payment for the canceled deposition, even though he was the one who refused to be deposed. *Id*. at *4. Finally, the expert also requested that the defendant, before the rescheduling of his deposition, estimate the maximum time that the deposition would take and pay that amount in advance, even if the actual time of the deposition was significantly shorter. *Id*.

8

five whole business days before deposition and is nonrefundable." *Doc. 36*, Ex. A-1 at 1.  Moreover, a separate schedule of fees provided by Defendant indicates that "[f]ull payment for time scheduled is due prior to time of service." *Id.* at 2. Under the circumstances here, the Court is unwilling to say that Dr. Cobb's requirement of advance payment is unreasonable.  In so holding, the Court notes that Dr. Cobb did not require the entire deposition fee to be paid in advance, but instead only the first hour's fee.

### C.  Sanctions against Defendant or Defendant's Counsel

Plaintiff argues that "the use of a subpoena to coerce a reduction of fee and change in terms is an inappropriate use of the subpoena power and sanctions are appropriate in such circumstances." *Doc. 41*.  However, while the Court has determined herein that Dr. Cobb's fee of $750.00 per hour plus GRT is not unreasonable, it nevertheless considers the fee to be on the high end of the fees typically awarded to Albuquerque specialists who testify before this Court. Accordingly, the Court is reluctant to sanction Defendant for his position.

Additionally, Defendant's counsel explains in his affidavit that it has been his practice to serve subpoenas along with notices of deposition to non-party witnesses, just as he did with Dr. Cobb.  Doc. 36, Ex. A.  Federal Rule of Civil Procedure 30(g) provides support for this practice.  It allows for reasonable expenses to be awarded  when a noticing party fails to serve a subpoena on a non-party witness who consequently fails to attend his deposition.  Fed. R. Civ. P. 30(g)(2).

Although the Court believes that utilizing its informal method for resolving discovery disputes early on in this case would have been a more productive and efficient manner of handling the dispute over Dr. Cobb's fee, the Court does not find Defendant's use of the subpoena power to be egregious or deserving of sanctions.

For these reasons, the Court will not award sanctions against Defendant or its counsel for challenging the amount of Dr. Cobb's expert fee or the requirement that it be paid in advance.

### D. Conclusion

For all of these reasons, Dr. Cobb's Motion to Quash Subpoena *Duces Tecum* (Doc. 33) is well-taken and will be granted. In the absence of Defendant's proper payment of Dr. Cobb's reasonable expert deposition fee, Defendant's subpoena subjects Dr. Cobb to undue burden under Rule 45(c)(3), and it should therefore be quashed. Defendant may once again notice Dr. Cobb for a deposition, but it will be required to pay $750.00 plus New Mexico Gross Receipts Tax, for a total of $802.50 for the first hour's fee, ten days in advance of the deposition to secure Dr. Cobb's appearance.

Wherefore,

**IT IS THEREFORE ORDERED** that the Motion to Quash is granted.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE